Brigadier General John H. Fenimore Formal Opinion
Disaster Preparedness Commission No. 96-Fl2
State Campus, Bldg. 22
Albany, N Y 12226-5000
Dear Brigadier General Fenimore:
You have asked us to address several questions regarding the allocation of powers and duties among the State and municipal entities charged with implementing New York's emergency preparedness laws.
In 1978, the State Legislature enacted a comprehensive revision and consolidation of the State', s disaster preparedness statutes. L 1978, chs 640, 641. Codified at Article 2-B of the Executive Law, these procedures embody New York State's official disaster response protocol. Article 2-B is designed so that the scope and severity of each emergency, as it arises, dictates the appropriate response, be it local, State, Federal or some combination thereof. At each level, Article 2-B establishes a clearly defined hierarchy of authority for the Governor, State agencies, local authorities and emergency service organizations involved.
Under Article 2-B, local governments are considered the "first line of defense in times of disaster". See, Executive Law § 20(1)(a). The scope and magnitude of many naturally occurring emergencies permit local authorities to provide a complete and efficient response without State assistance, and in such cases Article 2-B gives local chief executives the ability to exercise comprehensive emergency powers independent of State control. Executive Law §§ 23(2)(ii), (7)(b), 24.
However, Article 2-B also reflects the need to centralize disaster planninq and response under a sinqle State-wide
authority. That agency is the State Disaster Preparedness Commission (DPC).[1] The DPC is an executive department commission composed primarily of a number of State agency heads serving in an ex officio capacity and local chief executive officers appointed by the Governor. Executive Law § 21(1). The chairperson is designated by the Governor. Id.The DPC has responsibility for researching and coordinating all aspects of State disaster preparedness, and ultimately, it has authority to assume command of certain State and local disaster operations. Id., §§ 21(3), 29. The Division of Military and Naval Affairs serves as the DPC's executive arm, see, id., § 21(2), and the Division has established the State Emergency Management Office (SEMO) to conduct the DPC's day-to-day administrative operations and provide permanent staff resources and facilities for State disaster planning and response. Id., §§ 21(2), 29-e(1)(e).
In the wake of an emergency, the chief executive officer of the affected municipality may proclaim a local state of emergency. Id., § 24(1). Upon such a declaration, Article 2-B authorizes the chief executive to issue any local emergency orders necessary to protect life and property or bring the emergency under control. Id., § 24(1)(a)-(f), (6). Local chief executives are also authorized to use "any and all facilities, equipment, supplies, personnel and other resources [of the municipality] in such manner as may be necessary to cope with the disaster or any emergency resulting therefrom". Id., § 25(1). A chief executive may also "request and accept assistance from any other political subdivision and may receive therefrom and utilize any real or personal property or the services of any personnel thereof on such terms and conditions as may mutually be agreed to by the chief executives of the requesting and assisting political subdivisions". Id., § 25(3).
If an emergency is beyond the capacity of the municipalities involved, State involvement will be triggered through one of two
Article 2-B mechanisms. Either a local chief executive may make a direct appeal for State assistance under section 24(7) of the Executive Law, or the Governor may make a determination on his or her own initiative that the disaster is beyond the capacity of local governments to respond adequately. Either way, the Governor may declare a State disaster emergency. Id., §§ 20(2)(b), 28(1). If the Governor finds that the disaster is of such severity and magnitude that effective response is beyond the capabilities of the State and the affected local governments, he or she may make a formal request for Federal assistance. Id., § 28(4).
First, you ask that we review the extent of the Governor's command and control authority over paid and volunteer local fire companies and departments after declaration of a State disaster emergency. You also ask whether our conclusion would be any different if the fire companies and departments had responded to the disaster prior to the State declaration.
Gubernatorial authority over paid and volunteer local fire companies and departments is predicated upon the type of Article 2-B action taken after a State declaration of a disaster emergency. Immediately after such a declaration, the DPC must decide whether it is necessary to create a temporary disaster relief organization under Executive Law § 21. This section states, in relevant part:
[U]nless it deems it unnecessary, [the DPC must] create, following the declaration of a state disaster emergency, a temporary organization in the disaster area to provide for integration and coordination of efforts among the various federal, state, municipal and private agencies involved. The commission, upon a finding that a municipality is unable tomanage local disaster operations, may, with the approval of the governor, direct the temporary organization to assume direction of the local disaster operations of such municipality, for a specified period of time, and in such cases such temporary organization shall assume direction of such local disaster operations, subject to the supervision of the commission. In such event, such temporary organization may utilizesuch municipality's local resources, provided, however, that the state shall not be liable for any expenses incurred in using such municipality s resources.
Executive Law § 21(3)(f). (Emphasis added.)
Once created, the temporary disaster relief organization will assume direction of a local disaster response operation, and may exercise all of the powers previously available to the local chief executive under Article 2-B. This includes the ability to use any "local resources" and personnel available under the local plan. See, Executive Law §21(3)(f), 23(7)(b). As it is used in section 21(3)(f), the term "local resources" includes local materials, facilities and services; arrangements for activating municipal and volunteer forces; and procedures under which emergency organization[2] personnel and resources will be used. Id., 23(7)(b)(4). The term "municipal and volunteer forces" includes local government and fire district fire companies and departments.
If the DPC decides that it is unnecessary to create a temporary organization, or decides that it is unnecessary for that organization to assume direction of the relief effort, it is making an implicit judgment that with some lesser measure of assistance from the State, the affected local governments can provide an adequate response to the emergency. In such instances, the DPC can only direct State operations and coordinate the State's disaster efforts with the local disaster operation. See,id., §§ 21(3)(e), 29.
In answer to your first question then, after the DPC-created temporary organization has assumed direction of a State disaster operation, it may be authorized by the DPC with the approval of the Governor to assume control of any public and private paid and volunteer fire companies and departments that have been activated or are available for activation under the local disaster plan. (It makes no difference whether the fire, companies and departments had responded to the disaster prior to the State declaration.) The Governor appoints the local chief executives to the DPC and is represented by the State department heads who are ex officio members of the DPC. Executive Law § 20(1)(e), 21(3)(f).
You also ask whether Executive Law § 29 gives the Governor command and control authority over the resources of local governments and private entities, including fire companies and departments. We believe that the precatory language of section 29 is dispositive of this question. Executive Law § 29 states:
Upon the declaration of a state disaster emergency the governor may direct any and all agencies of the state government to provide assistance under the coordination of the disaster preparedness commission. Such state assistance may include: (1) utilizing, lending, or giving to political subdivisions, with or without compensation therefor, equipment, supplies, facilities, services of state personnel, and other resources, other than the extension of credit; (2) distributing medicine, medical supplies, food and other consumable supplies through any public or private agency authorized to distribute the same; (3) performing on public or private lands temporary emergency work essential for the protection of public health and safety, clearing debris and wreckage, making emergency repairs to and temporary replacement of public facilities of political subdivisions damaged or destroyed as a result of such disaster; and (4) making such other use of their facilities, equipment, supplies and personnel as may be necessary to assist in coping with the disaster or any emergency resulting therefrom.
Executive Law § 29. (Emphasis added.) The introductory language authorizes the Governor to order State agencies to provide emergency assistance to the DPC. Section 29 then lists the types of assistance that may be provided by State agencies.
You have inquired whether the fourth clause of this section is authority for the Governor to assume control over local public and private resources. We believe that use of the term "their facilities" in the fourth clause is meant to refer to the facilities of State agencies, not those of local government or private entities. In context, this reference to making "such other use" of equipment, supplies, etc., to assist in coping with the disaster is a provision to allow State agencies, upon order of the Governor, to provide other assistance in addition to the specific categories of assistance listed in clauses 1 through 3. Nothing in either the wording of section 29 or its legislative history permits us to construe its provisions as authority for the Governor or the DPC to assume control of local resources during a disaster. Bill Jacket, L 1978 Ch 640.
We believe, therefore, that gubernatorial authority over local resources, public or private, can only be achieved through the activation of a section 21 temporary disaster response organization. It is section 21 alone, and not section 29, that gives the Governor, acting through the DPC-supervised temporary disaster relief organization, command and control over the resources and personnel of local governments and private entities. This includes public and private paid and volunteer fire companies and departments.
You next ask us to determine who bears financial responsibility for the resources used during a disaster response. When a local disaster emergency is declared a municipality remains responsible for the costs incurred during the response. Article 2-B makes no provision for automatic State reimbursement of local disaster operations. While local governments may seek State assistance in the form of disbursements from the contingency reserve fund[3] (see, Executive Law § 29-e), the governmental emergency fund, or from such other funds as may be available (see, id., § 28[4]), such allocations are purely discretionary (id., §§ 28[4] ["the governor . . . may make available . . . sufficient funds to provide the required state share of grants made under any federal program for meeting disaster related expenses"], and 29-e), and they cannot be viewed as anything more than a supplement to the municipality's primary financial role.
Supplies, manpower or other aid are provided to one municipality by another pursuant to whatever arrangements are made and agreed upon by the requesting and providing municipalities. See, Executive Law § 25(3). In instances where the State supplies resources, manpower or other assistance under Executive Law § 29, it does so at its own expense, since such aid is provided only when a State disaster emergency is declared, which in turn is predicated upon a decision that the local government is unable to respond adequately. When a State disaster emergency is declared, the local governments are to bear the costs incurred, pending any funds which may be available under State and Federal disaster relief programs. In the event an Article 2-B temporary disaster relief organization has been created, the Legislature has clearly provided that "the state shall not be liable for any expenses incurred in using such municipality's resources". Executive Law § 21(3)(f).
Finally, you ask whether a gubernatorial declaration of a disaster emergency supersedes potentially conflicting provisions in the Environmental Conservation Law and General Municipal Law dealing with fire response and mutual aid. Executive Law § 29-a states that:
Subject to the state constitution, the federal constitution and federal statutes and regulations, and after seeking the advice of the commission, the governor may by executive order temporarily suspend specific provisions of any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary to cope with the disaster.
Executive Law § 29-a(1).
Article 2-B limits such suspensions to 30-day periods and 30-day renewal periods, and it requires the publication of all suspensions in the State Bulletin. Id., § 29-a(2)(a). The State Legislature retains the authority to terminate such executive orders at any time by concurrent resolution. Executive Law § 29-a(4). These provisions clearly outline the Legislature's intent to authorize the Governor, acting within constitutional parameters, to supersede temporarily conflicting provisions of State law when necessary to cope with a disaster. See, Bill Jacket, L 1978 ch 640; see also, Statute of Local Governments §11(1).
Very truly yours,
DENNIS C. VACCO, Attorney General
[1] The State Civil Defense Commission (CDC) is a companion emergency preparedness organization to the DPC. The CDC is responsible for preparing for, and responding to, foreign invasion and attack. See, New York State Defense Emergency Act, L 1951, ch 784. When the Legislature created the DPC in 1978, it included a provision in Article 2-B authorizing the use of civil defense forces in disaster emergencies. See, Executive Law § 29-b. The Governor may at his or her discretion order the CDC to participate in disaster relief operations under the command of a State civil defense director who has been appointed by the CDC. See, id., § 29-b(1); Unconsolidated Laws § 9120(2); see also, Unconsolidated Laws § 9103(14) (defining the scope of CDC "drills". At the county level, the chief executive may also direct the county civil defense director to participate in disaster relief. Executive Law §29-b(2).
[2] "Emergency service organizations" are defined by Executive Law § 20(2)(e) to include public or private agencies, organizations or groups organized and functioning for the purpose of providing fire prevention, medical, ambulance, rescue and other services. Id., § 23(7)(b)(15). The term "emergency service organizations" is not used in the statute but the closest term used is "emergency organization" which is listed as a local resource available for use during a disaster under the local response plan. Our reading of Article 2-B leads us to presume that the two terms are meant to have the same meaning.
[3] In 1993 the Legislature enacted the New York State Emergency Assistance Program. L 1993 Ch 603. Codified at section 29-e of the Executive Law, it authorizes the Governor to issue a declaration finding that an unanticipated natural disaster has caused an affected municipality "significant economic distress". Executive Law §29-e(2). Such a declaration permits a municipality to make an application to SEMO for reimbursement from the State's Contingency Reserve Fund for the extraordinary costs associated with the reconstruction or repair of public infrastructure and public facilities damaged by unanticipated natural emergencies. Executive Law § 29-e(3)(a); see, Assembly Memorandum in Support, Bill Jacket, L 1993 Ch 603.